UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM H. WALDON, JR.,

        Petitioner,               Case No. 03-10152
                                                 Honorable David M. Lawson

v.

WARDEN PHILLIPS,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, William H. Waldon, Jr., presently confined at the Cooper Street Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner attacks his state court sentence for violating probation, alleging that he is wrongfully incarcerated for nonpayment of restitution; the probation agent included inadequate and misleading information in the pre-sentence case report; he was denied an evidentiary hearing in state court; and his sentence violates the principle of proportionality. The respondent filed a response to the petition asserting that the claims are unexhausted, not cognizable, or otherwise lack merit. The Court finds that the claims lack merit or are not cognizable on habeas review, and therefore the petition will be denied.

I.

      On May 3, 1999, the petitioner pleaded guilty in the Genesee County, Michigan circuit court to two counts of embezzlement over $100 by an agent or trustee. *See* Mich. Comp. Law § 750.174. The offense was punishable by a fine up to $5,000 or imprisonment up to ten years or both a fine and imprisonment. The charges arose after the petitioner stole cash from a medical management company while he was employed there as an office manager. He took over $40,000 from the

company, which he claimed was to pay for his wife's medical bills. However, his wife later verified that the petitioner began taking the money before she and the petitioner were married and before her condition was diagnosed.

On June 15, 1999, the trial court sentenced the petitioner to five years of probation and fifty-two weekends in jail. The trial court also ordered the petitioner to pay restitution in the amount of $25,643.26 with at least $450 payable per month. The petitioner agreed to this fee schedule. The trial court nevertheless warned the petitioner that if he violated any of the terms of probation, the court could sentence him up to ten years in prison.

The petitioner subsequently was charged with violating the terms of probation by failing to report to jail on two weekends. He pleaded guilty to the charges on February 10, 2000, but the trial court continued the petitioner's probation for five years and gave him sentencing credit for five months that he spent in Shiawassee County Jail.

The petitioner later was charged with failing to pay restitution as ordered, and on December 20, 2000, he pleaded guilty to violating probation by not paying restitution. At the time, he had paid only $25 in restitution. He promised, however, to make a payment of $50 the following day and $50 every week thereafter. The trial court approved the petitioner for voice track monitoring and released the petitioner so that he could report to his job.

The petitioner failed to make the promised restitution payments, and he failed to comply with the voice track monitoring program. As a result, on February 1, 2001 the trial court set aside the petitioner's sentence of probation and re-sentenced the petitioner to concurrent terms of six to ten years in prison and ordered him to pay $25,618.26 in restitution.

The petitioner moved to set aside his convictions and to schedule a formal hearing at which he could testify about his income and expenses. The trial court denied the motion after noting that the court previously had engaged in dialogue with the petitioner about his income and expenses.

The petitioner appealed his sentence to the Michigan Court of Appeals. He alleged through counsel that his sentence: (1) violated his constitutional right to equal protection of the law; and (2) was disproportionate to the offense and the offender. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Waldon*, No. 239251 (Mich. Ct. App. Sept. 27, 2002). The petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on March 31, 2003 because it was not persuaded that the questions presented should be reviewed. *People v. Waldon*, 468 Mich. 875, 659 N.W.2d 238 (2003).

The petitioner filed the present habeas corpus petition on July 1, 2003. He alleges that: (1) he is wrongfully incarcerated for nonpayment of restitution; (2) the probation agent included inadequate and misleading information in the pre-sentence case report; (3) he was denied an evidentiary hearing in state court; and (4) his sentence violates the principle of proportionality. Because the petitioner has not filed a supporting brief, the Court construes his claims to include the allegations made in his state appellate court brief. The respondent urges the Court to deny the habeas petition on the grounds that the petitioner's claims are unexhausted, not cognizable, and without merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas

corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

Federal courts may not grant a habeas corpus petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The respondent argues that the exhaustion requirement is not satisfied in this case because the petitioner's second habeas claim was not presented to the state courts on appeal. Although normally the failure to

exhaust state court remedies requires dismissal of the entire petition, *Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir. 1999) (citing *Rose v. Lundy*, 455 U.S. 509, 522 (1982)), the failure to exhaust state remedies is not an absolute bar to adjudication when, as here, the federal claims lack merit and requiring additional proceedings in state court would waste time and judicial resources. *Id*. at 333; 28 U.S.C. § 2254(b)(2). The Court therefore will excuse the exhaustion requirement in the interest of judicial economy and proceed to address the merits of the petitioner's claims.

A.

The petitioner alleges first that he is wrongfully incarcerated for nonpayment of restitution. The petitioner alleges that 50% of his income was used to pay child support and he was unable to pay restitution due to lack of funds. In state court, the petitioner argued that his right to equal protection of the law was violated because he was penalized on the basis of his economic status and inability to pay restitution.

The Supreme Court has stated that "[a] defendant's poverty in no way immunizes him from punishment." *Bearden v. Georgia*, 461 U.S. 660, 669 (1983). However,

> the State cannot 'impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.' In other words, if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it.

*Id*. at 667-68 (quoting *Tate v. Short*, 409 U.S. 395, 398 (1971)) (alterations in original). On the other hand, "[i]f the probationer has wilfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection." *Id*. at 668.

On June 15, 1999, when the petitioner was sentenced on the embezzlement charges, he stated that he was earning between $900 and $1,500 per week at a construction company. On August 20, 1999, he began serving a sentence in Shiawassee County Jail, but he was released on January 19, 2000. Eleven months later on December 20, 2000, the petitioner informed the trial court that until recently, he had been earning a combined income of approximately $550 per week from his jobs at Campus Ford and the Lansing State Journal. He stated that the Lansing State Journal took $60 from his pay for child support, and Campus Ford took one-half of his pay for child support. His rent was $100 per week.

The petitioner claimed that he recently quit his job at Campus Ford, a car dealership in Okemos, Michigan, because company officials found out that he was seeking hourly compensation as opposed to commissions. However, the sales manager at Campus Ford informed the probation agent that the petitioner worked at his pleasure, coming in one or two days per week for a couple of hours. According to the sales manager, the petitioner was asked not to return to work only after he failed to show up for work on a couple of days.

As of December 20, 2000, the petitioner had paid only $25 in restitution in this case. The probation agent and the petitioner's victims believed that the petitioner had no intention of paying restitution.

The record suggests that the petitioner did not make reasonable efforts to pay restitution; in fact, based on the record it is safe to say that the petitioner made no effort at all. It appears that he could have made some payments during the summer of 1999, and he should have made at least small amounts of restitution after he was released from jail in 2000. He failed to demonstrate a good-faith effort to comply with the restitution order, and his failure to do so was his own fault.

The petitioner also failed to demonstrate "a willingness to pay his debt to society and an ability to conform his conduct to social norms" by complying with the other conditions of probation. *Bearden*, 461 U.S. at 670. He failed to report to jail on two weekends, and he did not comply with the requirements of the voice track monitoring program. In addition, his sales manager at Campus Ford described his work habits as horrendous. The petitioner apparently continued to defraud people while on probation by falsely stating to employees in the service department of Campus Ford that he was authorized to have the cost of car repairs deducted from his paycheck. He had not received such authorization, and he owed the dealership $1,300 for car repairs when he left the company. A bench warrant had to be issued for the petitioner's arrest because he failed to appear for sentencing on January 11, 2001.

The trial court determined that the petitioner's "pattern of compliance while on probation [w]as . . . a miserable failure" and that "the objects of th[e] probationary sentence [could not] be attained." Tr. Feb. 1, 2001, at 7. The trial court went on to address the petitioner as follows:

> You deceived your employer. You've deceived your probation agent. . . . I put a trust in you with the Voice Track Monitoring Program. You violated that trust. You come here with a long criminal history and a restitution obligation that you obviously aren't taking seriously. So I've concluded that probation is not a realistic viable sentence here.

*Id*. at 8.

The record in this case belies any possible claim that these findings are clearly erroneous; therefore they are presumed correct. 28 U.S.C. § 2254(e)(1). It is apparent that the trial court did not sentence the petitioner to imprisonment solely on the basis of his inability to pay restitution. Therefore, the state appellate court's conclusion that the petitioner's claim lacked merit did not

result in a decision that was contrary to or an unreasonable application of *Bearden*, and the petitioner has no right to habeas relief on the basis of his first claim.

B.

The second habeas claim is that the probation agent provided the trial court with inadequate and misleading information in the pre-sentence case report. The petitioner contends that the probation agent: (1) falsely reported that the petitioner was a bad employee; and (2) failed to forward information regarding the petitioner's financial status to the sentencing judge.

The Supreme Court has stated that reliance on "extensively and materially false" information, which the prisoner had no opportunity to correct, violates due process of law. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *accord Roberts v. United States*, 445 U.S. 552, 556 (1980); *United States v. Tucker*, 404 U.S. 443, 447 (1972). To prevail on his claim, the petitioner must demonstrate that the disputed information was materially false, the trial court relied on the information, and the petitioner had no opportunity to rebut the information. *See Collins v. Buchkoe*, 493 F.2d 343, 345-46 (6th Cir. 1974).

At the plea proceeding on December 20, 2000, the petitioner explained his monthly income and expenses, and the trial court acknowledged the petitioner's struggle. The court even asked the probation agent to reassess the petitioner's ability to pay.

At the sentencing hearing on February 1, 2001, the petitioner's attorney produced evidence that the Eaton County Family Court took 50% of the petitioner's pay for child support. The trial court said that it had read the letter, and neither defense counsel nor the petitioner had any other addition or correction to make to the pre-sentence case report.

The prosecutor then stated, on the basis of the probation agent's pre-sentence case report, that the petitioner had lied to everybody and had created new victims while employed at the Ford dealership. Defense counsel responded that pre-sentence reports and agents sometimes are wrong and that he did not think the petitioner was trying to make new victims. Defense counsel described the petitioner as traumatized and tortured by what he had done and what had happened to him. When the trial court asked the petitioner whether there was anything he wanted to tell the court, the petitioner said, "No, sir." Sent. Tr. at 7 (Feb. 1, 2001).

The trial court stated in response to defense counsel's remarks that although people can reach erroneous conclusions and acquire wrong impressions, the petitioner had "left a trail of deception, manipulation, [and] fraud in all areas of [his] life." *Id.* at 8. The court noted that the petitioner had deceived his employer and the probation agent, and he had violated the court's trust in him.

This Court concludes from the foregoing summary of the record that the trial court did not rely on materially false and misleading information regarding the petitioner's income and work habits. The petitioner was confronted with the allegations, failed to object, and actually appeared to have acquiesced to them. *See United States v. DeCarlo*, 434 F.3d 447, 460 (6th Cir. 2006) (holding that the failure to object to a fact as reported in a presentence report amounts to an admission) (citing *United States v. Adkins,* 429 F.3d 631, 632-33 (6th Cir. 2005)). Therefore, the state appellate court's determination that the petitioner's claim lacked merit was neither contrary to nor an unreasonable application of clearly established federal law.

C.

In his third habeas claim the petitioner alleges he was denied an evidentiary hearing in state court on his ability to pay restitution. The petitioner contends that during state court proceedings,

he had to rely on his memory while under stress and was not permitted to submit his pay stubs or the letter from the Eaton County Friend of Court as proof of his inability to pay restitution. The petitioner cited *People v. Music*, 428 Mich. 356, 361, 408 N.W.2d 795 (1987), in his state court brief for the proposition that he had a right to be heard on his assertion that he was unable to pay restitution.

The alleged failure to comply with state law does not amount to a cognizable claim on habeas review. *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000). The Court may grant a writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3) and 2254(a); *Robinson v. Stegall*, 355 F.3d 916, 917 (6th Cir. 2004).

Nonetheless, the right to be heard on a claim is fundamental to the fairness of a proceeding and is required by the Due Process Clause. *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (holding that "[t]he fundamental requirement of due process is the right to be heard 'at a meaningful time and in a meaningful manner'") (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). However, the record indicates that the petitioner was not deprived of his constitutional right to procedural due process. On October 23, 2000, he waived his right to a hearing within fourteen days and requested a hearing in six to eight weeks so that he could acquire the information he needed. The hearing was adjourned a few times until December 20, 2000, when the petitioner pleaded guilty to violating probation. He could have submitted documentation to the trial court at or before that proceeding. During the course of the plea proceeding, the petitioner explained his income and expenses to the trial court, and he promised to pay $50 on the following day and $50 every week thereafter. His

promise gave the reasonable impression that he was able to pay some restitution, even if it was not as much as originally ordered.

The Court concludes that the petitioner was accorded notice and an opportunity to be heard on the charge of failing to pay restitution. Therefore, the constitutional right to procedural due process was not violated, and the state court's determination that the petitioner's claim lacked merit did not result in a decision that was contrary to or an unreasonable application of federal law.

D.

The fourth and final habeas claim is that the petitioner's sentence of six to ten years is disproportionate to the offense of violating probation by failing to pay restitution. In state court, the petitioner argued that his sentence violated the principle of proportionality set forth in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990). The Michigan Supreme Court held in *Milbourn* that a sentence constitutes an abuse of discretion if the sentence "violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 2. This claim is not cognizable on habeas review because it alleges only a violation of state law. *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).

The petitioner also has not stated a viable constitutional claim. The Supreme Court has not provided a clear path to those seeking to challenge a sentence on the basis of disproportionality; therefore habeas claimants have an exceedingly difficult time showing that a sentence violates "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *See McPhail v. Renico*, 412 F. Supp. 2d 647, 655 (E.D. Mich. 2006). Moreover, "a sentence within the statutory maximum set by statute generally does not constitute

'cruel and unusual punishment.'" *United States v. Organek,* 65 F.3d 60, 62 (6th Cir.1995) (citation omitted) (quoted with approval in *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir.2000)).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin,* 213 F.3d at 301 (quoting *Williams,* 337 U.S. at 245, 69 S.Ct. 1079).

The petitioner's conduct on probation demonstrated that probation was not a suitable sentence.  Furthermore, the sentence of six to ten years in prison fell within the allowable sentences under state law.  *See* Mich. Comp. Law § 750.174 (prescribing a ten year maximum sentence for embezzlement).  The Court concludes, therefore, that the petitioner's prison sentence was not grossly disproportionate to the offense or to the offender, nor did it constitute cruel and unusual punishment under the Eighth Amendment.  Therefore, the state court's conclusion that the petitioner's claim lacked merit was neither contrary to nor an unreasonable application of federal law.

III.

For the foregoing reasons, the Court concludes that the petitioner's claims lack merit, and he has failed to show that he is in custody in violation of the Constitution or federal law.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 3] is **DENIED**.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated:  February 5, 2007

-14-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 5, 2007.

                                      s/Felicia M. Moses
                                      FELICIA M. MOSES